**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Securities and Exchange Commission,** | ) | **CASE NO. 1:02 CV 324** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Frank D. Gruttadauria, et al.,** | ) | **Memorandum if Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |


### INTRODUCTION

This matter is before the Court upon the Motion by Plaintiff Securities and Exchange Commission ("SEC") for Approval of a Distribution Plan, and Appointment of a Distribution Agent and Tax Administrator (Doc. 174). For the reasons that follow, the motion is GRANTED in PART and DENIED in PART.

### FACTS

Plaintiff, SEC, filed this action against defendants, Frank D. Gruttadauria, and various entities and individuals related to Gruttadauria, to recover funds obtained as a result of a massive fraud scheme. Gruttadauria sent investors fraudulent account statements that overstated

1

the value of their investment accounts.  Ultimately, Gruttadauria plead guilty to various criminal charges and was sent to prison.  The SEC brought this action to collect monies illegally obtained by defendants as a result of the fraudulent scheme.  The SEC collected $3.55 million and now seeks to disburse the funds.

The SEC brought "settled administrative enforcement actions" against two brokerage houses for their failure to properly supervise Gruttadauria.  As a result of these actions, the investors received accelerated payments of their net principal.  According to the SEC, each investor has received at least the total sum of money invested, less any withdrawals.  In addition, these settlements did not require the release of claims the investors may have had against the brokerage houses.  Most investors filed arbitration claims through a specialized process and many received monies in excess of their net principal.  It is undisputed that many investors signed confidential settlement agreements with the brokerage houses.  In addition, certain customers pursued actions and obtained judgments directly against Gruttadauria.  The collective amounts of the judgments far exceed the amount the SEC seeks to disburse.

The SEC moves the Court for approval of a distribution plan and for appointment of a distribution agent and tax administrator.  Two objections were filed.  Elaine Meyerhoff and "Robert Fazio, et al.," ("Fazio Objectors"), former Gruttadauria customers, object to the plan.

**ANALYSIS**

The SEC proposes that the funds be distributed to the investors.  The principal thrust of the SEC's plan is the creation of a five-tiered system.  Each tier contains a dollar range, *i.e.*, tier two is $1 million through $4 million.  The payment each investor will receive depends on which range the investor is assigned.   The SEC proposes to research and obtain the final account

2

balances of each investor.  The final account balance will determine which range an investor is placed in.  The amount of distribution the investor can expect to receive varies depending on the range.  For example, the SEC believes that an investor falling in tier two will receive $50,000, while an investor falling in tier five will receive $250,000.  The SEC also seeks appointment of a distribution agent and a tax administrator.  The distribution agent will oversee coordination of the disbursement of the funds, while the tax administrator will assist with tax withholdings, as the SEC claims this fund is a "qualified settlement fund."

The objectors claim that the SEC's plan is flawed.  Each objection will be addressed in turn.

1. Objection to "tiering"

Both objectors argue that the SEC should not be permitted to simply review the last account statement and create tiers of recovery.  Rather, the objectors argue that there are relatively few accounts and that a much more precise accounting should be done.  Specifically, the objectors ask that the Court order the SEC to make a determination as to the difference between the statement balance and the monies actually obtained by each particular investor.  According to the objectors, some investors have been fully compensated, while others have recovered very little.  The objectors argue that the calculation would be relatively simple.  In response, the SEC argues that the calculations are not simple and would drain a considerable amount of the fund, leaving much less for disbursement to the investors.  The SEC also argues that analyzing each account on a claim by claim basis would in essence amount to another round of arbitration.  The merits of each "reliance" claim would need to be analyzed in order to determine which customers are entitled to a greater relief.  The SEC points out that these claims

3

were already addressed through arbitration and should not be repeated in this case.  In addition, the SEC notes that the many of the settlement agreements customers signed contain confidentiality provisions.  Therefore, it would be impossible for the SEC to ascertain the amount of monies already recovered by these customers.

Upon review, the Court finds that the SEC's proposed tiering system is appropriate under these circumstances.  The objectors offer no argument regarding the difficulty the SEC will have in computing each investor's particular loss in light of the confidential nature of the settlement agreements.  In addition, the Court is somewhat concerned by the unusual result that might occur, particularly with respect to customers such as the Fazios.  It appears that the Fazios availed themselves of the arbitration process, but were unsuccessful in proving their claims.[1] Although unclear, to the extent the objectors are suggesting that all that is required is a simple addition and subtraction calculation, the Court rejects the argument.  To engage in such a simplistic calculation would wholly ignore the validity of each investor's reliance claim, and to require the SEC to reevaluate the merits of each claim would essentially make the arbitration process meaningless.   In all, the Court rejects the objectors' suggestion that the SEC should be required to analyze each investor's account on a case by case basis.  The Court finds that the SEC's approach will be less costly, more equitable and result in a more timely distribution of funds.

2.      Lack of preference for judgments

The objectors also argue that the SEC's plan fails to take into account that some former

---

[1]      The Court notes, however, that the SEC claims that the Fazios withdrew more than double the amount of their investment.

4

customers obtained personal judgments against Gruttadauria.  Both objectors argue that judgment creditors should be given preference.  The Fazio Objectors point out that they spent nearly $70,000 in attorneys' fees obtaining their judgment.  The SEC indicates that it considered, but rejected, the idea of giving preferential treatment to those customers who obtained judgments against Gruttadauria.  According to the SEC, it would be unjust to give a preference to judgment creditors because many other investors reasonably chose not to seek judgments against Gruttadauria, knowing that they would not be collectible.  In addition, the SEC points out that all customers had an equal opportunity to obtain a return of their principal and seek additional compensation through arbitration.  According to the SEC, giving preference to judgment creditors would encourage yet another round of litigation in the hopes of "jumping the line" in the event the SEC distributes monies from a collection action.

Upon review, the Court finds that the SEC's decision not to give a preference to judgment creditors is both fair and reasonable.  The Court recognizes that there is no perfect solution for the mess Gruttadauria left in his wake and no distribution plan will result in complete equity.  The Court, however, cannot say that a preference for judgment creditors is more equitable than no preference.  The Court finds it entirely unfair to award funds solely on the basis of a judgment, without consideration of the degree to which the judgment may have been satisfied through repayment of principal or arbitration awards.  This would require a review of the settlement agreements, which, as set forth above, are confidential.  Moreover, the Fazio Objectors' plan fails to consider the timing of the judgments obtained.  As the SEC points out, the Fazio Objectors' judgment was obtained *after* the SEC collected the monies at issue in this case.  Thus, there is some question as to whether earlier obtained judgments would trump the

Fazio Objectors' judgment in any event.  Regardless, the Court agrees with the SEC that in this case judgment creditors should have no preference over the funds to be disbursed.  No party has offered any equitable way to give such a preference that would promote the SEC's goal of compensating all of the victims.

       3.        Distribution agent/tax administrator fees

The Fazio Objectors claim that any fees to be paid to the distribution agent and the tax administrator should not be paid out of the fund.  Rather, those fees should be paid out of the $5 million in fines levied by the SEC against the brokerage firms.[2]

Upon review, the Court finds that the fees should be paid out of the funds collected.  The Court anticipates that the fees will be very minimal, given that the SEC's distribution plan is simple and straightforward.  In addition, it appears that much of the investigatory work regarding investors and locations is already in the possession of the SEC.  Given the facts of this case, the Court finds that payment of fees out of the fund is appropriate.  The Court notes, however, that it will not grant requests from the distribution agent of tax administrator that appear in excess of that which is warranted for a simple distribution plan.

       4.        Due process

The Fazio Objectors argue that due process is not satisfied because the distribution plan prevents claimants from filing claims against the distribution agent or tax administrator and limits the appellate rights of the investors.  Upon review, the Court agrees with the Fazio

---

[2]      The Fazio Objectors argue that the SEC should not withhold taxes from the investors.  In response, the SEC points out that it is not seeking tax withholding for the investors.  Rather, the fund itself is required to withhold taxes.

Objectors regarding the waiver of appellate rights in paragraph nine, to the extent such appellate rights exist.  Accordingly, the Court will not adopt that provision as drafted.  The Court agrees with the SEC, however, that the limitation on claims against the distribution agent and/or the tax administrator are warranted.  Any irregularities against these entities will likely be resolved through the petitioning and appellate processes set forth in the plan.

5.      Meyerhoff's account statement

Meyerhoff also objects to the manner in which the SEC has calculated her "final account balance" for purposes of distribution.  This objection, however, is premature in that the distribution plan provides for a mechanism to challenge erroneous account statements.  The SEC is afforded an opportunity to hear the objection and, if unsatisfied with the result, the investor may petition this Court for relief.  Accordingly, the Court will not address this objection at this point in time.

6.      Residual balance

The SEC proposes that any residual funds remaining after disbursements to victims, taxes, fees and expenses are paid should be remitted to the U.S. Treasury.  The Fazio Objectors claim that any remaining funds should be given to the victims.  These objectors also argue against remitting any unclaimed funds to the U.S. Treasury.  In response, the SEC argues that the Fazio Objectors misunderstand the proposed plan, because investors need not "claim" their funds.  Rather, the distribution agent will seek out all investors and ensure payment.  Therefore, there will be very little residual funds to remit.

Upon review, the Court finds that the issue of residual fund disbursement should be addressed after the victims are compensated and all taxes, fees and expenses are paid.  At such

7

time, the SEC must petition the Court for final disbursement and, depending upon the amount remaining, the Court will make an appropriate determination as to the recipient of any residual funds.

7. CRIS account

The Court notes that the funds are being held in a National City bank account, not a CRIS account.  Accordingly, the revised distribution plan must be amended to reflect the correct account.

**CONCLUSION**

For the foregoing reasons, the Motion by Plaintiff Securities and Exchange Commission for Approval of a Distribution Plan, and Appointment of a Distribution Agent and Tax Administrator is GRANTED in PART and DENIED in PART.  The SEC must submit a revised proposed order consistent with this opinion on or before January 30, 2009.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan            
PATRICIA A. GAUGHAN
United States District Judge


Dated: 1/13/09

8